UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

FRANKIE L. BOWIE

VERSUS                                                          CIVIL ACTION NO. 08-773-JJB-DLD

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL
SECURITY

## MAGISTRATE JUDGE'S REPORT

Plaintiff seeks judicial review of a final decision of the Commissioner denying his claim disability income benefits (DIB).  In making that final decision, the Commissioner reached the fifth and final step of the five-step sequential disability analysis set forth in 20 C.F.R. §§ 404.1520(b)-(f) & 416.920(b)-(f),[1] finding that the plaintiff had severe impairments of borderline intellectual functioning and asthma, but that these impairments, whether singularly or combined, did not meet or equal a listing. The Commissioner also determined that the plaintiff was unable to perform his past relevant work as a construction laborer, but had the residual functioning capacity to perform the exertional requirements of medium work with some limitations.  Applying Rule 203.25, table no. 3, and Section 404.1569 as a guide and framework for decisionmaking, the Commissioner determined that significant jobs existed in the national economy which plaintiff could perform despite the limitations in his RFC; therefore, plaintiff was not disabled within the meaning of the Social Security Act. (TR 25-31)

*Background*

Plaintiff protectively filed for Title II disability insurance benefits ("DIB") on September 12, 2002, alleging a disability onset date of August 23, 2002, due to lung failure and a back

---

[1] *See,e.g.*, *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

injury/problem from a trailer accident. At the time of his application, plaintiff had experience as a stable hand, construction laborer, and a landscape laborer/foreman. (TR 155-156) Plaintiff alleged in his application that because he experienced shortness of breath, it was hard for him to finish his work and to lift things, and he needed help to complete his duties. He also alleged he had a problem with dust. (TR 155).

      This claim was denied initially on May 8, 2003, without explanation. The initial determination found that plaintiff had a primary diagnosis of borderline intellectual functioning, but was silent as to his alleged lung failure and back problems. After filing a timely request for a hearing, the hearing was held on July 13, 2005, which resulted in an unfavorable decision on June 15, 2006. In this original decision, the ALJ found that the plaintiff had the severe impairments of borderline intellectual function and functional illiteracy, but that these severe impairments, whether singularly or in combination, did not meet the criteria of any Listing, and plaintiff could return to his past relevant work.[2] In reaching this conclusion, the ALJ relied on the results of a Weschler Adult Intelligence Scale III test (WAIS III) administered by Dr. Marc Zimmermann, which revealed a verbal I.Q. of 66, a performance I.Q. of 65, and a full scale I.Q. of 63, along with a consultative exam by Dr. Alan Taylor regarding plaintiff's adaptive functioning capabilities.

      The plaintiff timely requested a review of this decision, and the Appeals Council vacated the decision on November 14, 2006. (TR 81-82) The Appeals Council remanded the case to the ALJ with specific instructions, including consideration of the post-hearing medical source statement of Dr. Miljana Mandich regarding plaintiff's exertional limitations;

---

[2] The ALJ also found that the plaintiff's chronic obstructive pulmonary disease was a non-severe impairment due to the stabilization of this condition. (TR 71)

evaluation of plaintiff's mental impairments utilizing the special technique required under § 404.1520a; and holding a supplemental hearing. Another hearing subsequently was held on October 17, 2007, and the ALJ issued the present unfavorable decision on March 22, 2008. Plaintiff appealed the ALJ's decision, and the Appeals Council declined to review the ALJ's decision, making the ALJ's decision the final decision of the Commissioner.

## *GOVERNING LAW*

In reviewing the Commissioner's decision to deny benefits, the Court is limited to a determination of whether the Commissioner's decision was supported by substantial evidence existing in the record as a whole and whether the Commissioner applied the proper legal standards. *E.g., Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988). In applying the "substantial evidence" standard, the Court must carefully scrutinize the record to determine if, in fact, substantial evidence supporting the decision does exist, but the Court may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute its judgment for the Commissioner's even if the evidence preponderates against the Commissioner's decision. *Id*. Substantial evidence means more than a scintilla, but less than a preponderance, and is such relevant evidence as a reasonable mind might accept to support a conclusion. *Id*. A finding of "no substantial evidence" will be made only where there is a conspicuous absence of credible choices or an absence of medical evidence contrary to the claimant's position. *Id*.

The overall burden of proving disability under the Social Security Act rests on the claimant. *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983). If the claimant proves that she no longer is able to work in her past relevant work, then and only then does the burden shift to the Commissioner to establish that the claimant nonetheless has the ability to

engage in other substantial gainful activity. *E.g., Rivers v. Schweiker*, 684 F.2d 1144, 1155-1156 & n.14 (5th Cir. 1982).

## *ISSUES*

The issue before this Court is whether the Commissioner's finding that Frankie L. Bowie is not disabled is supported by the substantial evidence and was reached by applying the proper legal standards. 42 U.S.C. § 405(g). Plaintiff argues for either reversal or remand based on errors committed at Steps 3 and 5 of the sequential disability analysis.

## *DISCUSSION AND ANALYSIS*

### *Issue 1 - Error at Step 3.*

Plaintiff argues that his mental impairment meets the criteria of either Listing 12.05c or Listing 12.05d, and that the ALJ erred in his interpretation of the introductory paragraph for Listing 12.05 when the ALJ added "adaptive functioning" as a "separate and controlling element." While plaintiff advances several arguments in support of his claim that he meets the listing criteria, the heart of the issue concerns the proper interpretation of the introductory paragraph for Listing 12.05. Listing 12.05 reads, in pertinent part:

> [Introductory Paragraph] Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;

OR

D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration.

Plaintiff interprets the introductory paragraph as stating that mental retardation based on IQ scores is established if the onset of the mental impairment was before age 22. Plaintiff's argument fails, however, because it is at odds with the Fifth Circuit's interpretation of this very issue. The Fifth Circuit very recently clarified the requirements to meet Listing 12.05 in *Randall v. Astrue*, 570 F.3d 651 (5th Cir. 2009), and found that a claimant must meet the diagnostic description of mental retardation **and** the severity criteria contained in Sections A, B, C, or D.  The court in *Randall* also explained that the diagnostic description of mental retardation is the threshold determination as to whether an impairment exists, and this threshold must be met before severity can be examined.[3]  In other words, none of the severity criteria matters unless the diagnostic description is first satisfied.

At its core, the fundamental flaw with plaintiff's argument is his misunderstanding of the diagnostic description.  First, the introductory paragraph defines the diagnostic description for mental retardation as "significantly subaverage general intellectual functioning **with** deficits in adaptive functioning initially manifested during the

---

[3]*Id., at \*658, \*659.*

developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22." "Onset before age 22" is simply an explanation for what is meant by "developmental period." Further, the diagnostic description itself is clear that simply having a low I.Q. score is not enough, even if the onset was during the developmental period because in order to be considered "mental retardation," a significantly subaverage I.Q. score **with** deficits in adaptive functioning is required.

As "deficits in adaptive functioning" is part of the diagnostic description for mental retardation and not an additional criteria, the ALJ was required to consider plaintiff's adaptive functioning abilities in connection with his I.Q. scores[4] in order to determine if plaintiff's mental impairment met the threshold definition of mental retardation, which he properly considered. In making his determination, the ALJ relied upon Dr. Zimmerman's WAIS III results as discussed in the original unfavorable decision, along with a consultative exam by clinical psychologist Dr. Alan Taylor wherein he ultimately assessed plaintiff with a mental GAF of 65, indicating that plaintiff was "generally functionally pretty well."[5] Dr. Thomas Fain, a clinical psychologist who testified at the second hearing, supported Dr. Taylor's assessment of plaintiff's adaptive skills as being more indicative of borderline intellectual functioning and not mental retardation.

---

[4] There is no dispute that plaintiff's I.Q. scores fell in the range of 60-69.

[5] Global Assessment of Functioning (GAF) is a numeric scale (0 through 100) used by mental health clinicians and doctors to rate the social, occupational and psychological functioning of adults. *See* DSM-IV-TR.

A 65-70 GAF rating would reflect "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." *Id.*

At Step 3, it is the plaintiff's burden to prove that an impairment meets **all** the criteria of a Listing, and as *Randall* demonstrates, this criteria requires satisfying the substantive requirements of the diagnostic description of the listing for mental retardation. Plaintiff did not meet his burden because the objective medical evidence indicated that he did not have the required deficits in adaptive functioning, and plaintiff failed to cite to any relevant medical evidence to the contrary. The ALJ committed no legal error at Step 3 of the disability analysis, and substantial evidence supports his decision. Plaintiff's remaining arguments are moot in light of his failure to meet the diagnostic description for Listing 12.05.

***Issue 2 - Errors at Step 5.***

Plaintiff alleges a number of errors by the ALJ at Step 5 of the disability analysis, some overlapping, but overall, the issue relates to the ALJ's RFC finding that the plaintiff could perform medium work with some limitations. Plaintiff argues that the correct finding should have been sedentary work, but because of the additional limitations due to his education and educational level, he is unable to do any work at all. In other words, under the Medical-Vocational Guidelines, he "grids out" at the lowest level of work (sedentary) because of his sixth-grade education.[6]

---

[6]The Medical-Vocational Guidelines are referred to as "grids" and may be used as a framework for decision-making when there are no non-exertional limitations. "Grids out" refers to these guidelines and in this case, means that even if sedentary work is available, under the given circumstances (plaintiff's sixth grade education), the Medical-Vocational Guidelines would direct a finding of disability. 20 C.F.R. Pt. 404, Subpt. P, App. 2

### *A. Specific Reasons for Credibility Findings.*

In connection with his claim that the RFC is incorrect, plaintiff argues that the only credibility assessment the ALJ gave in his decision was to state "the claimant is credible only to the extent his allegations are consistent with the findings set forth herein," and that this assessment fails to comply with the requirements of SSR 96-7p. Plaintiff contends that SSR 96-7p requires that the ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."[7] Plaintiff's only argument seems to be that the ALJ should have credited plaintiff's entire testimony as being consistent with the objective medical evidence.

While it is technically true that the ALJ must give specific reasons for his credibility determination, "neither the regulation nor interpretive case law requires that an ALJ name, enumerate, and discuss each factor in outline or other rigid, mechanical form. It suffices when the administrative decision is sufficiently specific to make clear that the regulatory factors were considered."[8] In this case, the decision is sufficiently clear in that while the ALJ did not give enumerated, specific reasons for his characterization of the plaintiff's credibility, he did consider the plaintiff's subjective complaints in the context of the objective medical evidence, and he did not completely reject plaintiff's complaints.[9]

---

[7]*Id.  See also*, SSR 06-3p.

[8]*Prince v. Barnhart*, 418 F.Supp.2d 863, 871 (E.D.Tex.2005), *citing Shave v. Apfel*, 238 F.3d 592, 595 (5th Cir.2001).

[9]The law in the Fifth Circuit is that while an ALJ must consider a claimant's subjective complaints, he is allowed to examine the objective medical evidence to test the claimant's credibility.  *Johnson v. Heckler*, 767 F.2d 180, 182 (5th Cir. 1985).

For example, with regard to plaintiff's physical condition, the ALJ specifically discussed plaintiff's testimony that he has difficulty breathing around perfume, dust, cleaners, heat, humidity or cigarette smoke, and his need to use special filters in the home, have a friend vacuum for him, and his use of an inhaler. The ALJ stated that the claimant "clearly has some respiratory problems which are sufficiently documented in the evidence of record" and "demonstrated some degree of limitation flowing therefrom." The ALJ emphasized that those limitations were included in the RFC and are entirely consistent with those set forth by Dr. Mandich regarding plaintiff's pulmonary functioning. (TR 28)[10]

Next, the ALJ discussed plaintiff's complaints regarding his mental condition. He noted that the plaintiff "went through the sixth grade and has trouble filling applications without help," "can write his name and do simple math but cannot multiply or divide," "cannot look up names in the phone" and "needs help reading, writing and paying bills." (TR 27) This discussion of the plaintiff's complaints is consistent with the plaintiff's testimony at the hearing.

The ALJ also noted in his decision that while he found plaintiff could perform medium work, that work was limited by plaintiff's inability to work at jobs requiring more than occasional interaction with the general public, and the ability to understand, remember and perform no more than simple one- or two-step instructions or work tasks. (TR 29). Further, when discussing the plaintiff's mental impairment and the adaptive functioning level associated with that impairment, the ALJ stated that the plaintiff "worked consistently from

---

[10]Dr. Mandich opined, among other things, that plaintiff would need to avoid work in environments which would expose the claimant to smoke, dust, gases, fumes, chemical vapors, particular matter, or other pulmonary irritants. (TR 27)

1978 through 2001 with earnings significantly above minimum wage for an entire period of 20 years." (TR 285) Neither plaintiff nor his counsel contradicted the ALJ's statement, and this work history is consistent with the record evidence.  There also is no opinion from any medical provider that limited plaintiff's ability to work other than that specified herein.  No medical provider has rendered an opinion that plaintiff is disabled, either.

In reviewing the decision as discussed herein, it is difficult for the court to ascertain exactly what the plaintiff contends were not "specific reasons" for the rejection of some of plaintiff's testimony. The plaintiff seems to be arguing that since his statements are consistent, they therefore must be credited as being the truth.  However, these statements are subjective by nature as they relate to an individual's own perception of his condition, whether or not there is an objective reason for the perception.  Moreover, the consistency of an individual's statements is not the issue; the issue is whether these statements are corroborated by the objective medical evidence.  The ALJ is not required to give subjective complaints precedence over the objective medical evidence.  *Carry v. Heckler*, 750 F.2d 479, 485 (5th Cir. 1985).  If this proposition were true, every claimant would receive benefits and there would be no need for the determination process. To the contrary, a claimant's subjective complaints may be discounted by an ALJ if they are inconsistent with other evidence in the record. *Dunbar v. Barnhart*, 330 F. 3d, 670, 672 (5th Cir. 2003).[11] An ALJ may find, from the medical evidence, that an applicant's complaints are not to be

---

[11] *See also*, Social Security Ruling ("SSR") 96-7 ("One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record. The adjudicator must consider such factors as: [t]he degree to which the individual's statements are consistent with the medical signs and laboratory findings and other information provided by medical sources, including information about medical history and treatment.")

credited or are exaggerated, too. *Johnson, supra*, 767 F.2d at 182. In this case, the ALJ's analysis of the objective evidence as it related to plaintiff's complaints, underscored his determination of plaintiff's credibility as intended under applicable rulings and regulations, even though he did not name or discuss each factor that led to his credibility determination. Thus, the ALJ's decision was sufficiently clear as to his finding regarding plaintiff's credibility.

### Issue 4 - SSR 06-3p and Information from Other Sources

In connection with his RFC argument, plaintiff contends that the ALJ ignored evidence by Stephanie Chalfin, a vocational rehabilitation consultant, and argues her opinion is considered an opinion from an "other source"[12] which must be considered and evaluated. While plaintiff is correct in arguing that a vocational rehabilitation counselor's opinion should be considered an "other source," he fails to recognize that when considering non-medical opinions from "other sources," the ALJ considers this evidence as he would all relevant evidence in the case record, and the weight of the evidence varies according to the facts of the case.[13] Also, not every factor for weighing opinion evidence will apply in every case.[14] Moreover, because vocational rehabilitation counselors are not considered "acceptable medical sources" but only "other sources," reliance on their opinions is merely

---

[12] Under Section 404.1513, the only acceptable medical sources who can provide evidence to establish an impairment are licensed physicians, optometrists, or podiatrists, licensed or certified psychologists, or qualified speech-language pathologists.

[13] SSR 06-3p. The other factors may include: (1) how long the source has known and how often he has seen the individual; (2) how consistent the opinion is with the other evidence; (3) the degree to which the source presents relevant evidence to support an opinion; (4) how well the source explains the opinion; (5) whether the source has a specialty or area of expertise related to the individual(s) impairment; and (5) any other factors that tend to support or refute the opinion.

[14] SSR 06-3p.

permissive. 20 C.F.R. §§ 404.1513(d)(1), 416.1913(d)(1). Acceptable medical sources may establish the presence of a medically determinable impairment, but as an "other source," the opinion of a vocational rehabilitation counselor "may" only be used to "show the severity of an impairment and how it affects the ability to work." *Id.*[15]

Also, while it is true that the ALJ generally should explain the weight given to these other sources or otherwise ensure that the discussion in the decision will allow a claimant or subsequent reviewer to follow the ALJ's reasoning, the ALJ still enjoys the "sole responsibility for weighing the evidence and may choose whichever physicians' diagnosis is most supported by the record." *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir.1991) (*citing Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir.1987)). Ms. Chalfin is neither a physician nor another acceptable medical source, and the ALJ was thus free to consider her opinion on a permissive basis. In this case, the ALJ did not discuss Ms. Chalfin's report and opinion in his decision, and thus *de facto* rejected Ms. Chalfin's opinion. However, the Fifth Circuit has rejected the argument that an ALJ must specifically state the evidence that supports his decision and discuss all the evidence that was rejected. *See Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir.1994).

Nevertheless, although the ALJ did not discuss Ms. Chalfin's opinion, the ALJ otherwise ensured that the discussion in the decision allowed a claimant or subsequent reviewer to follow his reasoning in reaching his decision. First, although he did not mention Ms. Chalfin's opinion at all, the discussion regarding her report can be found in the hearing

---

[15]This distinction between "acceptable medical sources" and other healthcare providers ("other sources") is important because only acceptable medical sources can establish the existence of a medically determinable impairment; offer a medical opinion; or be a qualified treating source whose medical opinion may be entitled to controlling weight. Social Security Ruling 06-3p.

transcript. Ms. Chalfin did not appear at the hearing, but according to Ms. Chalfin's curriculum vitae, she has a B.S. in rehabilitation counseling and an M.S. in Rehabilitation Counseling and Vocational Evaluation. (TR 187) According to her report, Ms. Chalfin administered the Slosson Intelligence Test (SIT), and concluded that plaintiff scored in the "mild handicapped" range. (TR 185-186) Ms. Chalfin explained that the SIT measures only verbal intelligence, and did not provide any scores or any further explanation of the results of this test. Dr. Fain, under questioning by plaintiff's counsel at the hearing, explained that the SIT is a screening instrument, heavily weighted on academic verbal performance, measures only "receptive vocabulary based verbal understanding of words," and the result of "mild handicapped,"as found by Ms. Chalfin, is not equivalent to the categories found in the Wechsler series of standards. (TR 290 - 292)[16]

Further, any failure on the part of the ALJ to discuss Ms. Chalfin's opinion is a procedural impropriety, and procedural improprieties "constitute a basis for remand only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision." *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir.1988). Here, such doubt does not exist because appropriate consideration of the assessments from the acceptable medical sources of Dr. Taylor and Dr. Fain as to the extent of plaintiff's mental impairment compelled the ALJ to credit the limitations recognized by these sources, which are consistent with Ms. Chalfin's opinions. Conversely, Ms. Chalfin's opinion that the plaintiff

---

[16]Ms. Chalfin also administered the Wide Range Achievement Test (WRAT4), and opined that plaintiff was limited to unskilled, manual labor based on the results of that test. (TR 185) According to Dr. Fain, and uncontested by plaintiff, WRAT measures only achievement, not intelligence. (TR 292)

was limited to unskilled manual labor is consistent with the ALJ's finding that the plaintiff's RFC limited him to unskilled, medium work. Plaintiff's arguments are without merit.[17]

***Issue 5 - Plaintiff "grids out" under § 201.17.***

Plaintiff argues that even if plaintiff's non-exertional limitations are not considered, plaintiff can only perform sedentary work, but "grids out" under § 201.17, given his education and educational background. Medical-Vocational Guidelines Rule 201.17 (the "grid") directs a finding of "disabled" for (i) a younger individual age 45-49; (ii) who is illiterate or unable to communicate in English; and (iii) who has previous work experience in the unskilled category or no previous work experience.[18] However, Plaintiff's argument that this Rule applies must first be predicated on a finding of illiteracy, a finding that the ALJ did not make. As it is undisputed that plaintiff had a sixth grade education, a "marginal education"[19] under the applicable statute, Rule 201.17 is inapplicable.

Next, plaintiff's conclusory statement that the ALJ erred in finding him capable of medium works fails as he provided no evidence in support of this statement. In contrast, according to Dr. Davidson's consultative exam of October 29, 2002, plaintiff is:

---

[17]Even if the court were to accept plaintiff's argument that the ALJ should have considered and discussed Ms. Chalfin's opinion, any error was harmless as claimant's substantial rights were not affected. *See*, *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir.2007) (ALJ's omission does not require remand unless it affected claimant's substantial rights).

[18]20 C.F.R. Pt. 404, Subpt. P., App. 2, Table No. 1, Rule 201.17.

[19]The Commissioner will "consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling." 20 C.F.R. § 404.1564(b)(1). A claimant with a "marginal education," by contrast, has "ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs." 20 C.F.R. § 404.1564(b)(2). "[F]ormal schooling at a 6th grade level or less" is generally considered a marginal education. *Id.*

> [A]ble to sit, stand or walk a full eight hour work day and do some exertional activities intermittently during the day. He can lift/carry or push/pull 75-100 punts . . . He has no problems with ranges of temperature, but should avoid polluted air. He can work a full 8 hour day at this time. (TR 193)

Also, according to Dr. Mandich's medical source statement of March 3, 2006, plaintiff can:

> [O]ccasionally lift and/or carry 50 pounds; frequently lift and/or carry 25 pounds; walk about 6 hours in an 8-hour workday, and otherwise was not limited in terms of his physical condition. (TR 243-246) [20]

Substantial evidence therefore supports the ALJ's finding on plaintiff's RFC, and plaintiff's other arguments related to the RFC are without merit.

*Conclusion*

Although the ALJ did not reach a result that was favorable to the plaintiff, his determination was well reasoned and supported by the substantial evidence in the record and was reached using the proper legal standard.

## RECOMMENDATION

For the foregoing reasons, the Magistrate Judge recommends that the decision of the Commissioner denying benefits be affirmed, and that the claimant's complaint be **DISMISSED**.

Signed in Baton Rouge, Louisiana, on March 23, 2010.

_____
**MAGISTRATE JUDGE DOCIA L. DALBY**

---

[20] The medical findings also include a normal spirometry conducted by Dr. Gary Carroll on March 14, 2006, and excellent blood gases and normal pulmonary exam by Dr. Davidson in 2002, yet the ALJ adjusted the RFC according to Dr. Mandich's recommendations as to plaintiff's exertional limitations.

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

FRANKIE L. BOWIE

VERSUS                                           CIVIL ACTION NO. 08-00773-JJB-DLD

MICHAEL J. ASTRUE, COMMISSIONER
OF SOCIAL SECURITY

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U.S. District Court.

In accordance with 28 U.S.C. §636(b)(1), you have fourteen days from date of receipt of this notice to file written objections to the proposed findings of fact and conclusions of law set forth in the Magistrate Judge's Report. A failure to object will constitute a waiver of your right to attack the factual findings on appeal.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on March 23, 2010.

_____
MAGISTRATE JUDGE DOCIA L. DALBY